UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Curtis Dale Richardson, | ) C/A No. 4:12-2850-RBH-TER |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) REPORT AND RECOMMENDATION |
| | )     (partial summary dismissal) |
| Gov. Nikki Haley; | ) |
| Kela Thomas, Director SCDPPS; | ) |
| Valerie Suber, Parole Examinations Manager; | ) |
| Tommy Evans, SCDPPS Attorney; | ) |
| William Byars, Director of SCDC; | ) |
| Dayne Haile, Office of SCDC General Counsel; | ) |
| SCDC Classification Supervisor, name unknown; | ) |
| SCDC Records Supervisor, name unknown; | ) |
| Ms. York, Classification employee; | ) |
| Ms. Hough, Grievance Coordinator; | ) |
| Ms. Rembert, Classification employee; | ) |
| Warden McKie, Kirkland C.I.' | ) |
| Trooper McCrackin; | ) |
| Sgt. Livingston; | ) |
| Ms. Broach, Dentist; | ) |
| Lt. Baker; | ) |
| Officer Rubino; | ) |
| David Tatarsky, SCDC Attorney, and | ) |
| Tyson Andrew Johnson, individual and official capacities, | ) |
| | ) |
| Defendants. | ) |
| _____ | ) |

This is a civil action filed *pro se* by a state prison inmate. Pursuant to 28 U.S.C. §636(b)(1), and District of South Carolina Local Civil Rule 73.02(B)(2)(e), this magistrate judge is authorized to review all pretrial matters in such *pro se* cases and to submit findings and recommendations to the District Court. *See* 28 U.S.C. § § 1915(e); 1915A (as soon as possible after docketing, district courts should review prisoner cases to determine whether they are subject to summary dismissal).

This case is before this magistrate judge on referral from the assigned district judge following his review of Plaintiff's Objections (ECF No. 15) to a Report and Recommendation (ECF No. 11) entered following initial review of the original Complaint. (ECF No. 1). Plaintiff was granted additional time to submit an amended complaint to the court with more specific factual allegations, and with more attention to clarifying separate claims and to informing the court which claims and allegations are asserted against which Defendants. (ECF No. 24). The Amended Complaint is now before the undersigned for initial review. (ECF No. 30).

## BACKGROUND

Curtis Dale Richardson ("Plaintiff") is an inmate at Kershaw Correctional Institution, part of the South Carolina Department of Corrections ("SCDC") prison system.  In the Amended Complaint filed in this case, Plaintiff names as Defendants the Governor of South Carolina; the Director of the South Carolina Department of Probation, Parole, and Pardon Services ("SCDPPPS"); two members of the Office of General Counsel of SCDC; an attorney with the SCDPPS;  a parole examinations manager; the Warden of Kirkland Correctional Institution; two persons who work in the classification department at SCDC; a grievance coordinator, two unnamed SCDC supervisory personnel inmate record and classification departments; a South Carolina Highway Patrol Trooper; a Horry County sheriff's deputy; an SCDC dentist, and two police officers for the City of Loris, South Carolina. (ECF No. 30, Am. Compl. 2).

He alleges, in "Claim 1," that the SCDPPS and SCDC Defendants conspired together and improperly relied on an unconstitutional policy or policies to change the classification of the firearm crime on which he is currently incarcerated from "non-violent" and "parole eligible" to "violent" and "non-parole-able." *Id*. at 3.  He alleges that this classification is incorrect and that it violates his due-process and equal protection rights because it precludes him from having a parole hearing even though other inmates with

2

similar convictions do have parole hearings and are considered for parole. *Id.* at 4. He also alleges that the incorrect classification prevents him from participating in programs such as work release or moving to "better custody." *Id.* Finally, Plaintiff asserts that this classification causes him mental stress and he asks to be awarded $ 500 million from those involved in the classification of his current charge and the denial of parole eligibility. *Id.* at 11.

In Claim 2, Plaintiff alleges that he was stopped and physically seized on January 27, 2011, by a City of Loris police officer (Defendant Rubino) and was ultimately charged by a second Loris officer (Defendant Lt. Baker) with the possession of a firearm charge on which he is currently serving a sentence. *Id.* at 5. He contends that the arrest on the firearm charges was without probable cause and that the resulting firearm charges on which he was convicted were "fruits of the poisonous tree" (the stop and vehicle search by Rubino). *Id.* He asks for "500 thousand dollars in damages from Rubino and Baker. *Id.* at 11.

In Claim 3, Plaintiff alleges that he was stopped on January 23, 2010, by Defendant Highway Patrolman McCrackin for a license/registration check, but that, ultimately, the trooper conducted a search and seized marijuana from his vehicle. *Id.* at 6. According to Plaintiff, the marijuana seizure "was illegal" and "in violation of the Fourth Amendment," and it caused or provided the basis for the five-year sentence he (Plaintiff) is currently serving.[1] *Id.* He seeks "an order granting 3 million dollars in damages," on this claim. *Id.* at 11.

---

[1] According the inmate locator on the SCDC internet website, Plaintiff is currently serving a five-year sentence entered by the state courts in Horry County. According to the online records of the Horry County General Sessions Court, Plaintiff entered a guilty plea on September 16, 2011, and received a 5-year sentence on the possession of marijuana charge (with and arrest date of January 24, 2010 and an indictment date of July 29, 2010), and a concurrent 3-year sentence on an "unlawful weapons" charge from a January 28, 2011 arrest. *See* SCDC, *Inmate Locator Function*, https://sword.doc.state.sc.us/scdc-public/(last consulted June 24, 2013 (3:52pm); S.C. Jud. Dep't, *Online Records*, http://publicindex.sccourts.org/Horry/PublicIndex/PISearch.aspx (last consulted June 24, 2013 (4:25pm)).

3

In Claim 4, Plaintiff alleges that he was subjected to double jeopardy in December 2010 by Defendants Livingston, Byars, Tatarsky, and McKie. Id. at 7- 8. He contends that he was returned to Horry County on a detainer for bad-check charges following his service of an eighteen-month SCDC sentence for an undisclosed conviction. According to Plaintiff, the detainer was lodged against him for his entire eighteen-month sentence, but he was actually convicted on the check charges "in his absence" while he was still in prison. He alleges that he was given a six-month sentence on that new conviction that he served while he was still in SCDC custody. Plaintiff states that when he completed his sentence and was returned to Horry County Detention Center by SCDC as a result of the detainer, Sgt. Livingston refused to let him see a judge to ask that the six-month sentence to be satisfied under "time served." As a result, according to Plaintiff, he was taken back to SCDC and required to serve the sentence again because he did not have the money to pay the amount of the checks. He alleges that he wrote to Defendants Byars, Tatarsky, and McKie about this alleged double jeopardy, but none of them did anything to help him. *Id*. He asks for "1 million dollars in damages" on this claim from all four of these Defendants. *Id*. at 11.

In Claim 5, Plaintiff alleges that Sgt. Livingston also violated his right of access to courts when he refused to arrange for Plaintiff to attend a court date on May 9, 2011, despite having been given notice that Plaintiff needed to be in court on that date. He asserts that the Clerk of the Court where he was supposed to attend informed him that two of his legal cases "were dismissed for [his] failure to appear." *Id*. at 9. He asks for $ 500,000 in damages on this claim. *Id*. at 11.

Finally, Plaintiff's sixth claim (Claim 6) asserts medical (dental) indifference against Defendants Broach and Reynolds, both Kershaw Correctional Institution employees/officials, arising from problems he asserts that he had with trying to get dental care for a broken tooth "for months." *Id*. at 10. He alleges that he was left in pain, that he lost sleep and weight, but that Defendant Broach refused to give him

additional pain medication (past the medication he received when he first saw her) or otherwise treat the tooth and that his grievances were "ignored" by Defendant Reynolds. *Id*. He seeks $ 800,000 in damages for this claim. *Id*. at 11.

## INITIAL REVIEW

Under established local procedure in this judicial district, a careful review has been made of Plaintiff's *pro se* Amended Complaint filed in this case. This review has been conducted pursuant to the procedural provisions of 28 U.S.C. § § 1915, 1915A, and the Prison Litigation Reform Act of 1996, and in light of the following precedents: *Denton v. Hernandez*, 504 U.S. 25 (1992); *Neitzke v. Williams*, 490 U.S. 319, 324-25 (1989); *Haines v. Kerner*, 404 U.S. 519 (1972); *Nasim v. Warden*, *Md. House of Corr.*, 64 F.3d 951 (4th Cir. 1995)(*en banc*); *Todd v. Baskerville*, 712 F.2d 70 (4th Cir. 1983); *Boyce v. Alizaduh*, 595 F.2d 948 (4th Cir. 1979).

*Pro se* complaints are held to a less stringent standard than those drafted by attorneys, *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978), and a federal district court is charged with liberally construing a complaint filed by a *pro se* litigant to allow the development of a potentially meritorious case. *Erickson v. Pardus*, 551 U.S. 89 (2007). When a federal court is evaluating a *pro se* complaint, the plaintiff's allegations are assumed to be true. *De'Lonta v. Angelone*, 330 F. 3d 630, 630n.1 (4th Cir. 2003). Nevertheless, the requirement of liberal construction does not mean that this court can ignore a clear failure in the pleading to allege facts which set forth a claim currently cognizable in a federal district court. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387 (4th Cir. 1990). However, even under this less stringent standard, the Amended Complaint filed in this case is subject to partial summary dismissal under the provisions of 28 U.S.C. § 1915(e)(2)(B) as to Defendants Haley, Rubino, McCrackin, Baker, and Johnson.

5

## DISCUSSION

Plaintiff includes South Carolina Governor Nikki Haley among the Defendants named in his Amended Complaint, however, he does not make any specific allegations of wrongdoing against her other than a brief reference to the fact that he "complained" to her about the sentencing/parole issues that he raises in Claim 1. *Id.* at 4. He impliedly asserts that because she did not force SCDC or SCDPPPS to take action to assist him, then she is liable for damages under § 1983. Plaintiff is incorrect in this contention because members of a state executive branch, such as Governor Haley, are immune from lawsuits which attempt to impose any form of liability, including claims for declaratory relief, damages, or retrospective or prospective injunctive relief, see *Baraka v. McGreevey*, 481 F.3d 187, 202-03 (3d Cir. 2007), when the relief requested would interfere with actions taken by the executive within the course and scope of his/her official executive duties *and* where the complained-of executive activities fall within at least one of the thirty-one exceptions to liability provided under the South Carolina Torts Claim Act. *Adkins v. Varn*, 439 S.E.2d 822 (1993); *see* S.C. Code Ann. § 15-78-60. *See McCall v. Batson*, 285 S.C. 243, 329 S.E.2d 741, 743 (1985)(Opinion abolishing sovereign immunity in tort "does not abolish the immunity which applies to all legislative, judicial and executive bodies and to public officials who are vested with *discretionary* authority, for actions taken in their official capacities."). The first five exceptions to governmental entity liability provided under the statute are:

> (1) legislative, judicial, or quasi-judicial action or inaction; (2) administrative action or inaction of a legislative, judicial, or quasi-judicial nature; (3) execution, enforcement, or implementation of the orders of any court or execution, enforcement, or lawful implementation of any process; (4) adoption, enforcement, or compliance with any law or failure to adopt or enforce any law, whether valid or invalid, including, but not limited to, any charter, provision, ordinance, resolution, rule, regulation, or written policies; (5) the exercise of discretion or judgment by the governmental entity or employee or the performance or failure to perform any act or service which is in the discretion or judgment of the governmental entity or employee."

S.C. Code Ann. § 15-78-60(1), (2). The complained-of inaction of Governor Haley in connection with Plaintiff's attempts to force SCDC to change the classification of his convictions from non-parole-able to parole-able and/or from violent to non-violent fall within the coverage of subsection (3) because Plaintiff's assertions in Claim 1 are that SCDC and SCDPPPS are not properly executing the orders of Horry County General Sessions Court, which ruled that Plaintiff's current incarceration is for non-violent, parole-able convictions. Those kinds of decisions are generally delegated by the Governor to agency action and are committed to the control of SCDC and/or SCDPPS. It is not within the Governor's authority to interfere with such specialized decision-making by agency officials and employees. *See, e.g., Kobe v. Haley*, No. 3:11-1146-TMC, 2012 WL 3269221 (D.S.C. Aug. 10, 2012)(Governor's immunity for claims arising from disputed agency actions not overcome by the fact that she appointed agency head, that she had supervisory authority over agencies, or that she signed allegedly unconstitutional bills into law); *McKinnedy v. Reynolds*, No. 6:08-3169-HMH-WMC, 2010 WL 500419 (D.S.C.)(Governor not liable for actions of all state employees or agency heads), *aff'd*, 393 F. App'x 973 (4th Cir. 2010), *cert. dismissed*, 131 S.Ct. 1615 (2011). As a result, Plaintiff states no plausible claim against Governor Haley and the Amended Complaint should be partially dismissed as to this Defendant.

The Amended Complaint also fails to state plausible Fourth Amendment claims against Defendants McCrackin, Baker, or Rubino based on their involvement as law enforcement officials in the two vehicle stops, the searches and seizures, and/or the criminal prosecutions that resulted in Plaintiff's current incarceration. Some of the allegations against McCrackin and all of those against Rubino show *potential* "false arrest" claims because it appears that the arrests made by these officers were made without a formal arrest warrant. *Dorn v. Town Of Prosperity*, 375 F. App'x 284 (4th Cir. 2010)(false arrest can only occur in warrant-less arrests). However, no plausible claim is stated against either McCrackin or Rubino because

7

the facts show that Plaintiff pled guilty to the drug and firearm charges that arose from both of those stops, seizures, and arrests. It is settled that a conviction on the charges arising from an allegedly "false arrest" precludes any liability for damages of law-enforcement officials involved in the arrest. *See, e.g.*, *Walker v. Schaeffer*, 854 F.2d 138, 143 (6th Cir. 1988); *Cameron v. Fogarty*, 806 F.2d 380, 387 (2d Cir. 1986); *Martin v. Delcambre*, 578 F.2d 1164, 1165 (5th Cir. 1978); *Schroeder v. Comcast Corp.*, No. C 11–02697 CRB, 2012 WL 215329, *2n.1 (N.D. Cal. Jan. 24, 2012); *see also Cannon v. Haverty Furniture Co.*, 183. S.E. 469, 484 (S.C. 1935) (a claim of "false arrest" after a conviction is obtained is an improper collateral attack on the judgment). Because false arrest is the only potential claim against Officer Rubino under Plaintiff's allegations, the Amended Complaint should be partially summarily dismissed as to this Defendant. The potential false arrest *claim* against Trooper McCrackin is also subject to partial summary dismissal.

Moreover, to the extent that Plaintiff's allegations against Defendants McCrackin and Lt. Baker involve their seizure of evidence (drugs and a firearm) from Plaintiff following the vehicle stops and the use of that evidence to institute the criminal charges to which Plaintiff pled guilty and for which he is currently incarcerated may be legally construed as potential Fourth Amendment "malicious prosecution" claims, the Amended Complaint is subject to partial summary dismissal based on the United States Supreme Court's decision in *Heck v. Humphrey*, 512 U.S. 477 (1994). With respect to actions filed pursuant to 42 U.S.C. § 1983 such as the present one alleging constitutional violations and/or other improprieties in connection with the prosecution of state criminal charges,[2] the Court stated:

---

[1] Section 1983 is the procedural mechanism through which Congress provided a private civil cause of action based on allegations of federal constitutional violations by persons acting under color of state law. *Jennings v. Davis*, 476 F.2d 1271 (8th Cir. 1973). The purpose of section 1983 is to deter state actors from using badge of their authority to deprive individuals of their *federally guaranteed* rights and to provide relief to victims if such deterrence fails. *McKnight v. Rees*, 88 F.3d 417(6th Cir. 1996)(emphasis added).

8

> We hold that, in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm whose unlawfulness would render a conviction or sentence invalid, . . . a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such a determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983. Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.

*Heck*, 512 U.S. at 486-87. By the above statements, the United States Supreme Court ruled that until a criminal conviction is set aside by way of appeal, PCR, habeas, or otherwise, any civil rights action based on the conviction and related matters will be barred.

Regardless of whether or not he is currently pursuing attempts to overturn the marijuana and firearm possession convictions, it is obvious that Plaintiff has not yet been successful at having them overturned because he is still incarcerated on the sentences imposed on those convictions. Because Plaintiff has not been successful in having his 2011 Horry County convictions set aside by way of appeal, PCR, habeas corpus, or otherwise, and because Plaintiff's allegations of illegal search and seizure by arresting or investigating officers, if true, would necessarily invalidate his convictions, he cannot sue either Defendant McCrackin or Lt. Baker for damages based on their involvement in his prosecution and ultimate conviction following a guilty plea. Because "malicious prosecution" is the only potentially plausible claim against Defendant Baker and because "false arrest" and "malicious prosecution" are the only potential claims against Trooper McCrackin, and because Plaintiff's drug and firearm possession convictions have not been set aside, the Amended Complaint should also be partially dismissed as to Defendants Baker and McCrackin.

Finally, Plaintiff lists "Tyson A. Johnson" of the South Carolina Attorney General's Office as a Defendant in the caption of the Amended Complaint; however, close examination of the contents of the entire pleading fails to disclose any allegations of wrongdoing as to this Defendant. Mr. Johnson's name is not mentioned in any of the six claims nor anywhere else in the Amended Complaint. As a result, the inclusion of Mr. Johnson as a party Defendant is frivolous and the Amended Complaint should be partially summarily dismissed as to this Defendant. *See Cochran v. Morris*, 73 F.2d 1310 (4th Cir. 1996)(statute allowing dismissal of *in forma pauperis* claims encompasses complaints that are either legally or factually baseless); *Weller v. Dep't of Social Servs.*, 901 F.2d at 389n. 2 (dismissal proper where there were no allegations to support claim). In absence of substantive allegations of wrongdoing against the named Defendant, there is nothing from which this Court can liberally construe any type of plausible cause of action arising from the Amended Complaint.  It is well settled that federal courts performing their duties of construing *pro se* pleadings are not required to be "mind readers" or "advocates" for state prisoners or *pro se* litigants.  *See  Beaudett v. City of Hampton*, 775 F.2d at 1278; *Gordon v. Leeke*, 574 F.2d at 115.

## RECOMMENDATION

Accordingly, it is recommended that the District Court partially dismiss the Amended Complaint in this case *without prejudice* as to Defendants Haley, Rubino, McCrackin, Baker, and Johnson. *See* 28 U.S.C. § 1915(e)(2)(B); 28 U.S.C. § 1915A (as soon as possible after docketing, district courts should review prisoner cases to determine whether they are subject to summary dismissal). The Amended Complaint should be served on the remaining Defendants.  Plaintiff's attention is directed to the important notice on the next page.

                                                          s/Thomas E. Rogers, III
                                                          Thomas E. Rogers, III
August 27, 2013                          United States Magistrate Judge
Florence, South Carolina